**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| GWENDOLINE ATEMKENG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 19-cv-00806-LKG |
| v. | ) | |
| | ) | Dated:  October 13, 2021 |
| DOCTOR'S HOSPITAL, INC., t/a | ) | |
| DOCTORS COMMUNITY HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.      INTRODUCTION**

Plaintiff, Gwendoline Atemkeng, brought this employment discrimination action against Doctor's Hospital, Inc., t/a Doctor's Community Hospital ("DCH"), pursuant to the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq*. ("Title VII") and the Maryland Fair Employment Practices Act, Md. Code (2009), § 20-606(a)(1)(i) of the State Government Article, for unlawful employment practices ("MFEPA").  *See generally* Compl., ECF No. 1.

DCH has moved for summary judgment pursuant to Fed. R. Civ. P. 56 on the issues of: (1) whether certain of plaintiff's discrimination claims are time-barred; (2) whether plaintiff has failed to exhaust administrative remedies for certain discrimination claims; (3) whether plaintiff can establish a prima face case of discrimination based upon race, color and national origin; (4) whether plaintiff can demonstrate a hostile work environment; and (5) whether plaintiff can establish a prima face case of retaliation.  *See generally* Def. Mot., ECF No. 39.  For the reasons that follow, the Court **GRANTS** DCH's motion for summary judgment and **DISMISSES** the complaint.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.     Factual Background

This employment discrimination action involves claims that DCH failed to promote plaintiff to several positions, in violation of Title VII and the MFEPA.  Specifically, plaintiff alleges that DCH and its agents and employees have:  (1) engaged in unlawful employment practices against her based upon her race, color and national origin; (2) systematically denied equal employment opportunities to her, including promotion; (3) subjected her to disparate treatment affecting the terms of her employment; (4) subjected her to a hostile work environment; and (5) otherwise deprived her of employment on the same terms as others who are not of African/Cameroonian origin.  *Id.* at ¶¶ 141-65.  As relief, plaintiff seeks, among other things, back pay, compensatory damages and certain injunctive relief.  *Id*. at 146-65.

As background, plaintiff is of African/Cameroonian descent and a career employee of DCH.  *Id.* at ¶¶ 3, 13.  DCH is a full-service hospital operating in Lanham, Maryland.  *Id*. at ¶ 4.

In September 2007, DCH hired plaintiff to serve as a Clinical Project Leader in the hospital's Information Technology Department.[2]  SMF at ¶ 2, ECF No. 39-2.  It is undisputed that plaintiff did not have any management responsibilities in the positions that she held before joining DCH, and that plaintiff has not held a supervisory or management position during her tenure at DCH.  *See generally* Compl.; Pl. Resp., ECF. No. 42-1; SMF at ¶ 4.

---

[1] The facts recited herein are taken from the complaint ("Compl."); DCH's statement of undisputed material facts ("SMF"); DCH's motion for summary judgment ("Def. Mot."), memorandum in support thereof ("Def. Mem."), and exhibits thereto ("Def. Ex."); plaintiff's response in opposition to DCH's motion for summary judgment ("Pl. Resp."), and exhibits thereto ("Pl. Ex."); and DCH's reply brief ("Def. Reply"). Except where otherwise noted, the facts recited herein are undisputed.

[2] In 2017, the title of plaintiff's position was changed to Senior Clinical Informatics Analyst.  Compl. at ¶ 13.

2

1.      **Plaintiff's Applications For Management Positions At DCH**

Plaintiff alleges that DCH discriminated against her upon the basis of race, color and national origin in connection with her applications for six different management positions:

First, in 2012, plaintiff applied for the IT Manager, Outpatient Services position with DCH and she was subsequently notified of her non-selection for that position on November 6, 2012. Compl. at ¶¶ 20-22. Alan Johnson, the chief information officer for DCH at that time, was the hiring manager for this position. *Id.* at ¶ 21.

An African American, non-Cameroonian candidate, Iris Frye, was selected for the position. *Id.* at ¶ 22; SMF at ¶ 31. DCH maintains that it did not promote plaintiff to the IT Manager, Outpatient Services position, because she was not the best fit for the job. SMF at ¶ 30; *see also* Harris Dec. ¶ 12, ECF 39-10. DCH also maintains that a "focus area" for the position was experience using the state's tracking mechanism, which Ms. Frye possessed but plaintiff did not possess. SMF at ¶ 32.

Second, on December 18, 2013, plaintiff applied for the IT Applications Manager, Requisition #2545 position with DCH and she was subsequently notified of her non-selection for that position in September 2014. Compl. at ¶¶ 30-31, 35; SMF at ¶ 37. It is undisputed that the IT Applications Manager, Requisition #2545 position requires two or more years of supervisory experience. SMF at ¶ 42; *see also* Def. Ex. 6, ECF No. 39-8 (Deposition of K. Harris, Vol. II, at 115).

Initially, DCH did not hire any of the applicants to fill this position and the position was put on hold. SMF at ¶ 38. On July 30, 2014, DCH offered the IT Applications Manager, Requisition #2545 position to an outside applicant, Mike Hirard. *Id.* at ¶ 43. But, Mr. Hirard declined the position. *Id.* It is undisputed that Mr. Hirard had previous management experience as a chief technology officer, as a vice president of IT and in several director roles. *Id.* at ¶ 44.

Third, on September 24, 2014, plaintiff reapplied for the IT Applications Manager, Requisition #2545 position. Compl. at ¶ 39. It is undisputed that, at that time, the IT Applications Manager, Requisition #2545 position required two or more years of supervisory experience. SMF at ¶ 42; *see also* Def. Ex. 6 (Deposition of K. Harris, Vol. II, at 115). In 2017, plaintiff was notified that the position was being filled another applicant, Patricia McWhorter.

Def. Mem. at 3.  Ms. McWhorter had prior management experience at the time she applied for this position.  SMF at ¶ 67.  DCH maintains that it did not promote plaintiff to this position because plaintiff was not the best fit for the job and she lacked supervisory experience.  *Id.* at ¶ 45.

Fourth, on August 11, 2016, plaintiff applied for the Manager, Clinical Informatics Requisition #3598 position with DCH and she was subsequently notified that the position would not be filled on September 12, 2017.  Compl. at ¶¶ 53, 61.  It is undisputed that the Manager, Clinical Informatics Requisition #3598 position requires "excellent administrative, management, and financial skills," as well as "excellent interpersonal face-to-face communication skills." SMF at ¶ 48.  DCH maintains that it did not promote plaintiff to this position, because plaintiff "was not the best fit for the job" and she "lacked the supervisory experience required for the position."  *Id.* at ¶ 51.  Ultimately, this position was not filled and DCH canceled the requisition for the position on May 10, 2017.[3]  *Id.* at ¶ 56.

Fifth, on April 28, 2018, plaintiff applied for the IT Applications Manager, Requisition #4710 position with DCH and she was subsequently notified of her non-selection for that position in July 2018.  Compl. at ¶¶ 109, 114, 122.  It is undisputed that the IT Applications Manager, Requisition #4710 position requires a minimum of three years of supervisory experience.  SMF at ¶ 90; *see also* Declaration of Kimara Harris [hereinafter "Harris Decl.", ECF No. 39-10.  In March 2019, DCH's chief information officer, Joyce Hanscome, hired Jonathan Schoemann for this position.  SMF at ¶ 93.  It is undisputed that Mr. Schoemann has extensive experience with IT administration, including two years as a manager and five years as an applications manager.  *Id.* at ¶ 94.

Lastly, on November 14, 2018, plaintiff applied for the Manager, Business Applications position with DCH and she was subsequently notified of her non-selection for this position in March 2019.  Compl. at ¶ 128.

---

[3] In October 2017, DCH reorganized its IT Department, resulting in the merger of the Clinical Manager and Business Manager positions into the IT Applications Manager, Requisition #2545 position and Patricia McWhorter's placement into the IT Applications Manager, Requisition #2545 position.  SMF at ¶¶ 61-66.

2.    **Plaintiff's Performance Evaluations**
      **And Performance Improvement Plan**

On October 2, 2017, plaintiff's supervisor, Joyce Hanscome, issued plaintiff's annual performance evaluation which rated plaintiff's overall performance as "Always Meets & Sometimes Exceeds Standards of Performance."  SMF at ¶ 75; *see also* Def. Ex. 11 at 7-10, ECF No. 39-11.  Ms. Hanscome noted in the performance evaluation that she did not think that plaintiff "realizes that when she interrupts, rolls her eyes or talks under her breath that she is being disrespectful" and that, if plaintiff wanted to move to a leadership position, such behaviors had to stop.  SMF at ¶ 76.

In March 2018, the consulting firm Pinnacle Talent Acquisition conducted a cultural assessment of DCH's IT Department.  SMF at ¶ 78-79; *see also* Def. Ex. 11 at 12-20.  The resulting report from Pinnacle Talent Acquisition contains references to staff morale issues related to plaintiff's conduct at work.  SMF at ¶ 82.

On August 28, 2018, DCH's Director of Employee Relations, DeLace Burch, met with plaintiff to discuss complaints that the Human Resources Department had received about her conduct at work.  *Id.* at ¶ 83.  On August 30, 2018, plaintiff received a performance evaluation which she alleges criticized her "manner of speaking."  Compl. at ¶ 124.  A subsequent performance evaluation issued on November 12, 2018, rated plaintiff's performance as a one out of five for working effectively with other employees.  SMF at ¶¶ 97-99.  This performance evaluation also rated plaintiff's overall performance as "Almost Meets Standards of Performance."  SMF at ¶ 99; *see also* Harris Decl. at 58-62, ECF No. 39-10.

On February 13, 2019, plaintiff was issued a 90-day performance action plan which required that plaintiff attend a communications seminar to improve her communications skills. *Id.* at ¶¶ 100-01.

3.    **Plaintiff's Hostile Work Environment Claim**

Plaintiff alleges that she was subject to multiple incidents at DCH which demonstrate a hostile work environment.  Compl. at ¶¶ 74-98.  Specifically, plaintiff alleges that DCH supervisors, including DCH Human Resources Director Paul Hagen, described her speech as "mumbling" and complained that no one could understand plaintiff due to her Cameroonian

accent.  *Id.* at ¶¶ 75-76.  Plaintiff also alleges that Patricia McWhorter teased her about not knowing how to turn off the air conditioner and asked plaintiff if she "knew how to read English."  *Id.* at ¶¶ 77-79; *see also* Def. Ex. 3. at 89.

In addition, plaintiff alleges that Ms. McWhorter challenged her when saying "Good Morning" and that Ms. McWhorter ordered plaintiff to look at her when speaking.  *Id.* at ¶¶ 80-84.  Plaintiff further alleges that Ms. McWhorter repeatedly asked plaintiff how she was feeling after plaintiff took sick leave and that multiple colleagues at DCH chided plaintiff for leaving a meeting too abruptly.  *Id.* at ¶¶ 85-95.  Lastly, plaintiff alleges that Ms. McWhorter made "constant and purposeful intrusions" into her office, by knocking on her office door and saying "Hi." multiple times.  *Id.* at ¶ 96.  DCH disputes that any of the aforementioned incidents occurred, except for the incident involving Ms. McWhorter teasing plaintiff about not knowing how to turn off the air conditioner.  Def. Mem at 17-18; SMF ¶ 60.

### 4.    Plaintiff's Retaliation Claim

Plaintiff also alleges that she was subject to retaliation in violation of state and federal law.  Compl. at ¶¶ 147-52, 159-65.  In this regard, plaintiff alleges that, on November 13, 2012, she emailed DCH's Vice President of Human Resources, Charlene Lundgren, and DCH's recruiter, Kimara Harris, to complain about the "decision process" for hiring a person to fill the IT Manager, Outpatient Services position.  SMF ¶ 33; *see also* Harris Decl. at 18-19.  Plaintiff also alleges that, in December 2012, she complained to DCH's human resources representative, DeLace Burch, about believing that her non-selection for the IT Manager, Outpatient Services position was based upon her race or national origin.  Compl. at ¶ 25.  Plaintiff further alleges that she subsequently met with Alan Johnson and Charlene Lundgren to discuss her belief that DCH's selection of another applicant for the IT Manager, Outpatient Services position was discriminatory.  *Id.* at ¶ 28.  In addition, plaintiff alleges that, at that meeting, Ms. Lundgren told her that she would "not [be] a good fit" for the position.  *Id.* at ¶ 29.  In this regard, plaintiff alleges that, on November 12, 2013, Alan Johnson sent her an email stating that, if plaintiff "had a complaint about the 'decision process,'" she should let HR know and that Mr. Johnson would "follow their lead, as necessary to help address any concerns."  Def. Reply. at 3-4, ECF No. 46; Pl. Resp. at 29; see also Pl. Ex. 1 at 2-3.

In addition, plaintiff alleges that, in September 2014, she complained to Alan Johnson and Human Resources Director Paul Hagens regarding the concern that her non-selection was both discriminatory and retaliatory.  Compl. at ¶ 36.  Lastly, plaintiff alleges that, in July 2016, she told Camille Bash, DCH's Chief Financial Officer, that she believed Alan Johnson was "retaliating against her and preventing her advancement."  *Id.* at ¶¶ 47-48.

### 5.   Plaintiff's Charge Of Discrimination

On November 15, 2017, plaintiff filed a Charge of Discrimination with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging a single claim of race and national origin discrimination, based upon DCH's failure to promote her to the IT Applications Manager, Requisition #2545 position in October 2017.  *Id.* at ¶¶ 7-8; SMF at ¶ 102; *see also* Harris Decl. at 68-72.  The Charge of Discrimination also alleges that DCH retaliated against plaintiff, by issuing the annual performance evaluation that plaintiff received on September 21, 2017.[4]  SMF at ¶ 103; *see also* Harris Decl. at 68-72.

Plaintiff commenced this employment discrimination action on March 15, 2019.  *See generally* Compl.  And so, MCCR dismissed plaintiff's charge of discrimination on March 22, 2019.  SMF at ¶ 104; Def Ex. S (March 22, 2019 MCCR Dismissal Letter).

To date, plaintiff remains employed with DCH.  Compl. at ¶¶ 13-14.

### B.   Procedural History

Plaintiff commenced this action on March 15, 2019.  *See generally* Compl.  On April 9, 2021, defendant filed a motion for summary judgment and a memorandum in support thereof.  *See generally* Def. Mot. and Def. Mem.  On June 8, 2021, plaintiff filed an amended response in opposition to DCH's motion for summary judgment.  *See generally* Pl. Resp.  Defendant filed a reply in support of its motion for summary judgment on July 2, 2021.  *See generally* Def. Reply.

---

[4] Plaintiff alleges without support that she amended her Charge of Discrimination on or about November 8, 2018, to add instances of discrimination and retaliation that occurred after November 15, 2017.  Compl. at ¶ 126.

Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C*., 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### B.    Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.[5]  Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court.  42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc*., 429 F.3d 480, 491 (4th Cir. 2005).  This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."  *Miles*, 429 F.3d at 491.

Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e–5(e)(1).  If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not

---

[5] Plaintiff also alleges that DCH violated the MFEPA by engaging in "unlawful employment practices." *See* Md. Code State Gov't § 20-606(a)(1)(i).  The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc*., No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing . . .; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred."  Md. Code State Gov't. § 20-1013(a).  And so, the MFEPA requires that a plaintiff file an employment discrimination action within two years of an alleged unlawful employment practice, provided that plaintiff's administrative charge was timely under federal or local law.  *See id.*  When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

The Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).  The Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Fort Bend Cnty, Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019).  And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC.  *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Mile*s, 429 F.3d at 491.[6]

There are two methods for proving intentional discrimination in employment under Title VII:  (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Brinkley v. Harbour Recreation Club*, 180

---

[6] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas*, 711 F.3d at 408; *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation.").

F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp*., 973 F.2d 371, 374 (4th Cir. 1992)).  To overcome a summary judgment motion based upon this method of proof, a plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Id.* at 607 (quoting *Goldberg v. B. Green & Co., Inc*., 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)).  And so, a plaintiff must provide "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'"  *Id.* (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*.  *See Tuck*, 973 F.2d at 374.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.  *See McDonnell Douglas Corp*., 411 U.S. at 802.  Specifically relevant to this employment discrimination dispute, a plaintiff may establish a prima facie case of discrimination based upon failure to hire or promote by showing that:  (1) she is a member of a class protected by Title VII; (2) she applied for the position in question; (3) she was qualified for the position; and (4) the defendant rejected her application under circumstances that give rise to an inference of discrimination.  *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005), *cert. denied*, 546 U.S. 1214 (2006).  The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a prima facie case.  *See Hemphill v. Aramark Corp.*, No. 12--1584, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's prima facie case.  *See Stokes v. Westinghouse Savannah River Co*., 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally

discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff also asserts retaliation and hostile work environment claims in this case.  Compl. at ¶¶ 147-52, 156, 159-65.  To prove retaliation, a plaintiff must show that:  (1) she engaged in protected activity; (2) she suffered an adverse employment action at the hands of defendant; and (3) defendant took the adverse action because of the protected activity.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (citing *Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 180 (4th Cir. 1998)).  A plaintiff lacking direct evidence of retaliation may also utilize the *McDonnell Douglas* framework to prove a claim of retaliation.  *See Foster v. Univ. of Md.*, 787 F.3d 243, 250 (4th Cir. 2015).

Lastly, to defeat a motion for summary judgment filed by a defendant employer related to a hostile work environment claim, plaintiff must demonstrate that a reasonable jury could find the defendant's harassment was:  "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere."  *See Spriggs*, 242 F.3d at 183; *see also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998).  But, even if the record supports the conclusion that a triable issue exists with regard to the aforementioned three elements of a hostile work environment, a plaintiff may not prevail absent sufficient evidence that there is some basis for imposing liability on the defendant.  *Spriggs*, 242 F.3d at 184; *see also Causey*, 162 F.3d at 801.

## IV.   ANALYSIS

DCH has moved for summary judgment in its favor upon five grounds, namely, that:  (1) plaintiff has failed to exhaust administrative remedies with regards to three of her failure to hire or promote claims; (2) certain of plaintiff's failure to hire or promote claims are time-barred under Title VII and the MFEPA; (3) plaintiff cannot establish a prima facie case of discrimination with regards to her remaining failure to hire or promote claim related to the IT Applications Manager, Requisition #2545 position; (4) plaintiff cannot prevail on her hostile work environment claim; and (5) plaintiff cannot establish a prima facie case of retaliation.  Def. Mem at 7-22.  And so, DCH requests that the Court enter judgment summarily in its favor with regards to all of plaintiff's discrimination claims.  *Id.* at 22.

Plaintiff counters in her response in opposition to DCH's motion that she has exhausted her administrative remedies and timely filed her discrimination claims. Pl. Resp. at 19-22. Plaintiff also argues that she can establish a prima facie case of discrimination, because: (1) she is in a protected class; (2) her supervisors often referenced her accent and manner of speech; (3) she was not promoted, despite being well qualified; and (4) the positions for which she was not selected were filled by non-Cameroonian-American individuals with comparable qualifications. *Id*. at 22-28. In addition, plaintiff contends that she has put forward direct evidence of discrimination, a hostile work environment and retaliation to support her claims. *Id*. at 28-31. And so, plaintiff requests that the Court deny DCH's motion. *Id.* at 31.

For the reasons set forth below, the undisputed material facts in this matter show that all but one of plaintiff's failure to hire or promote claims are either time-barred, or have not been administratively exhausted. Plaintiff has also failed to establish direct evidence, or a prima facie case, of discrimination with regards to her remaining failure to hire or promote claim. In addition, plaintiff's hostile work environment and retaliation claims are unsubstantiated by the undisputed material facts in this case. And so, the Court **GRANTS** DCH's motion for summary judgment and **DISMISSES** the complaint.

A. **Most Of Plaintiff's Claims Are Either**
**Untimely Or Have Not Been Administratively Exhausted**

As an initial matter, the undisputed material facts in this case make clear that plaintiff's failure to hire or promote claims relating to the IT Manager, Outpatient Services and IT Applications Manager, Requisition #2545 positions are untimely. For these claims to be timely, plaintiff must have filed an administrative charge of discrimination with the EEOC within 180 days after the alleged discriminatory act occurred, or within 300 days if, as is the case here, she presented these claims to the MCCR. *Hentosh*, 767 F.3d at 417. The MFEPA also requires that plaintiff file this civil action within two years of an alleged unlawful employment practice, provided that her administrative charge has been timely filed. *See* Md. Code State Gov't. § 20-1013.

It is undisputed that the non-selections relevant to these two discrimination claims occurred in November 2012 (IT Manager, Outpatient Services) and September 2014 (IT Applications Manager, Requisition #2545), respectively—more than 300 days before plaintiff

filed her charge of discrimination on November 15, 2017.  Def. Mem at 8; Pl. Resp. at 2, 4, 9.

Given this, plaintiff's failure to hire or promote claims relating to the IT Manager, Outpatient

Services and IT Applications Manager, Requisition #2545 positions are time-barred under Title

VII and the MFEPA.[7]  And so, the Court must dismiss these claims.

The undisputed material facts also show that plaintiff has not exhausted her

administrative remedies with regards to her failure to hire or promote claims relating to the

Manager, Clinical Informatics Requisition #3598; IT Applications Manager, Requisition #4710;

and Manager, Business Applications positions.  Title VII requires that plaintiff file a charge of

discrimination regarding these claims with the EEOC before filing suit in this Court.  *See* 42

U.S.C. § 2000e-5(f)(1) (2006) (permitting civil suit by the "person claiming to be aggrieved"

after filing of a charge with the EEOC and upon receipt of a right-to-sue letter).  This

"exhaustion requirement ensures that the employer is put on notice of the alleged violations so

that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Here, it is undisputed that plaintiff filed a charge of discrimination with the MCCR and

EEOC on November 15, 2017, alleging a single claim of race and national origin discrimination,

based upon DCH's failure to promote her to the IT Applications Manager, Requisition #2545

position in October 2017.  *See* Compl. at ¶¶ 7-8; SMF at ¶ 102; *see also* Harris Decl. at 69-70.

Plaintiff's charge of discrimination also alleges that DCH retaliated against her, by issuing the

annual performance evaluation that she received on September 21, 2017.  SMF at ¶ 103; *see also*

Harris Decl. at 69-70.  But, the charge of discrimination does not contain any claims or

allegations about plaintiff's non-selection for the Manager, Clinical Informatics Requisition

#3598; IT Applications Manager, Requisition #4710; or Manager, Business Applications

---

[7] These claims are also time-barred under the MFEPA's two-year statute of limitations, because plaintiff did not commence this action until March 5, 2019—more than two years after the subject non-selections occurred.  *See* Def. Mem. at 9-10; *see generally* Compl.  Plaintiff's argument that these claims are timely under the continuing violation doctrine is also unpersuasive.  *See* Pl. Resp. at 21-22.  The Fourth Circuit has held that, when time-barred, failure to hire or promote claims cannot be revived by the continuing violation doctrine.  *See Belton v. City of Charlotte*, 175 F. App'x 641, 653 (4th Cir. 2006) (holding that plaintiff could not revive time-barred claims based upon a multi-year pattern or practice of discrimination when "the challenged acts [were] each individually time-barred"); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (holding that "failures to promote remain discrete acts of discrimination" even when plaintiff asserts they are part of a broader pattern of discrimination).

positions.  *See* Harris Decl. at 69-70.  Given this, plaintiff has not exhausted her administrative remedies with respect to these failure to hire or promote claims.[8]  And so, the Court must also dismiss these claims.

### B. Plaintiff Cannot Show Direct Evidence, Or A Prima Facie Case, Of Discrimination

The undisputed material facts in this case also show that plaintiff cannot prevail on her remaining failure to hire or promote claim relating to her reapplication for the IT Applications Manager, Requisition #2545 position.  As noted above, plaintiff may prove intentional discrimination in employment under Title VII through either direct or indirect evidence of intentional discrimination, or through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  To overcome a summary judgment motion in a discrimination case that relies upon proof of direct or indirect evidence of intentional discrimination, plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Brinkley*, 180 F.3d at 607 (quoting *Goldberg v. B. Green & Co., Inc*., 836 F.2d 845, 848 (4th Cir. 1988)).  If plaintiff relies upon circumstantial evidence instead, she must first establish a prima facie case of discrimination in a failure to hire or promote case, by showing that:  (1) she is a member of a class protected by Title VII; (2) that she applied for the position in question; (3) she was qualified for the position; and (4) the defendant rejected her application under circumstances that give rise to an inference of discrimination.  See *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d at 268.  Plaintiff cannot meet either burden of proof in this case.

First, the undisputed material facts make clear that plaintiff cannot prove intentional discrimination by using direct or indirect evidence.  Plaintiff argues that she can put forward

---

[8] Plaintiff's argument that she has exhausted administrative remedies with respect to these three claims, because she subsequently amended her charge of discrimination on or about November 8, 2018, is also unsubstantiated.  Plaintiff relies upon a letter from the MCCR, dated November 15, 2017, which advises plaintiff of her rights during the EEO process.  *See* Pl. Resp. at 21-22; *see also* Pl. Ex. V, ECF No. 43-27 (Letter from Maryland Commission on Civil Rights).  But, this letter neither addresses plaintiff's non-selection for the subject positions, nor shows that plaintiff amended her November 15, 2017, charge of discrimination.  *See generally* Pl. Ex. V.

direct evidence of discrimination in this case to support her failure to hire or promote claims, because Ms. Hanscome noted in plaintiff's performance evaluation that she did not think that plaintiff "realizes that when she interrupts, rolls her eyes or talks under her breath that she is being disrespectful" and that if plaintiff wanted to move to a leadership position, such behaviors had to stop.  SMF at ¶ 76; *see also* Pl. Resp. at 28.  Plaintiff also alleges that she has direct evidence of discrimination, because Paul Hagen and other supervisors described her speech as "mumbling" and complained that no one could understand plaintiff due to her Cameroonian accent, and Ms. McWhorter teased her about not knowing how to turn off the air conditioner and asked her if she "knew how to read English."  *Id.* at ¶¶ 75-79; *see also* Hanscome Dep. at 89.  In addition, plaintiff relies upon evidence showing that after her non-selection for the IT Manager, Outpatient Services position in 2012, Mr. Johnson sent her an email stating that if she "had a complaint about the 'decision process,'" she should let DCH's human resources department know and that Mr. Johnson would "follow their lead, as necessary to help address any concerns." Def. Reply at 3-4; Pl. Ex 1 at 2-3.

But, even if the Court accepts these allegations as true, none of these alleged statements or incidents constitute direct evidence showing that plaintiff's supervisors engaged in intentional discrimination based upon her race, color, or national origin.  *See Johnson v. Toys "R" Us-Delaware, Inc*., 95 F. App'x 1, 7 (4th Cir. 2004) (observing that direct evidence cannot include statements that require the factfinder to "choose between mere possibilities of meanings") (internal citation omitted).  Rather, the Court would need to draw inferences from these alleged incidents to find evidence of intentional discrimination.

Plaintiff also does not point to any other evidence showing racially-charged statements or conduct related to her non-selection for the IT Applications Manager, Requisition #2545 position that could constitute such direct or indirect evidence of intentional discrimination.  *See generally* Compl.; *see also* Pl. Resp.  Given this, plaintiff has not shown that she could prevail on her remaining failure to hire or promote claims based upon direct evidence of intentional discrimination.

Plaintiff also fails to establish a prima facie case of discrimination with regards to her non-selection for the IT Applications Manager, Requisition #2545 position.  As discussed above, to establish a prima facie case for failure to hire or promote, plaintiff must show that:  "(1) [she]

16

is a member of a protected group; (2) [she] applied for the position in question; (3) [she] was qualified for the position; and (4) [she] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir.1998) (citation omitted). But, plaintiff cannot satisfy this burden here, because the undisputed material facts show that plaintiff was not qualified for the position at issue. It is undisputed that the IT Applications Manager, Requisition #2545 position requires two or more years of supervisory experience. SMF at ¶ 42; *see also* Def. Ex. 6 (Deposition of K. Harris, Vol. II, at 115). It is also undisputed that plaintiff lacked such supervisory experience at the time that she applied for this position. SMF at ¶ 45, Def. Mem. at 12.

While plaintiff contends that she was better qualified for this position than Ms. McWhorter, plaintiff's personal views regarding her qualifications and experience are not sufficient to show that she was actually qualified for the position within the context of Title VII. *See Evans*, 80 F.3d at 960 (holding that a plaintiff's own "unsubstantiated . . . assertions concerning her own qualifications" for a position did not demonstrate qualification under Title VII) *see also* Pl. Resp. at 23 (arguing that plaintiff met her employer's expectations in several "excellent performance reviews"). Given this, plaintiff's undisputed lack of prior management experience shows that plaintiff cannot meet her burden to establish a prima facie case of discrimination to support her remaining failure to hire claim. *See* Fed. R. Civ. P. 56.

### C.   Plaintiff's Hostile Work Environment And Retaliation Claims Are Unsubstantiated

Plaintiff's hostile work environment and retaliation claims are also problematic. To demonstrate a hostile work environment, plaintiff must show that a reasonable jury could find DCH's alleged harassment (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *See Spriggs*, 242 F.3d at 184-85 (citing *Causey*, 162 F.3d at 801). This Court has held, however, that "teasing and personality clashes are different in kind and degree from an employment atmosphere that is 'permeated with discriminatory intimidation, ridicule, and insult.'" *See Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 793 (D. Md. 2020) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)). And so, courts in the Fourth Circuit have declined to find a hostile work environment, even in workplaces where there are egregious circumstances such as yelling and

physical altercations.  *See id.* at 793-94 (collecting cases); *see also Khoury v Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (no hostile work environment despite one occasion when supervisor "yelled at [p]laintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent [p]laintiff from leaving while he continued to yell at her").

Here, plaintiff points to multiple incidents involving alleged statements by her supervisors about her speech and mannerisms as evidence of a hostile work environment.  For example, plaintiff alleges that Patricia McWhorter:  (1) challenged her when saying "good morning"; (2) ordered plaintiff to look at her when speaking;  (3) repeatedly asked plaintiff how she was feeling after plaintiff took sick leave; (4) accused plaintiff of leaving a meeting "abruptly"; and (5) made "constant and purposeful intrusions" into plaintiff's office.  Compl. at ¶¶ 80-98.  Plaintiff also alleges that her supervisors described her speech as "mumbling" and complained that no one could understand plaintiff due to her Cameroonian accent, and that Ms. McWhorter teased her about not knowing how to turn off the air conditioner despite having a graduate degree, and asked her if she "knew how to read English."  *Id.* at ¶¶ 75-77.  Plaintiff also alleges that, after her non-selection for the IT Manager, Outpatient Services position in 2012, Alan Johnson sent her a "demeaning" email that "made fun" of plaintiff's written English.  Pl. Mem. at 29.

But again, even if the Court accepts plaintiff's allegations as true, the above-mentioned incidents are simply not sufficient to support a hostile work environment claim.  None of the alleged incidents address or implicate plaintiff's race, color, or national origin.  *See Angelini*, 464 F. Supp. 3d at 790 (noting that "complaints premised on nothing more than 'rude treatment by [coworkers]', 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII") (quoting *EEOC v. Sunbelt Rentals, Inc.* 521 F.3d 206, 315-16 (4th Cir. 2008)).  Indeed, while plaintiff may certainly have experienced unwelcomed teasing or conflict with her supervisors, these incidents are not sufficiently severe or pervasive to constitute a hostile work environment.  *See id.*  Given this, DCH is also entitled to summary judgment in its favor with regards to plaintiff's hostile work environment claim.  Fed. R. Civ. P. 56.

Plaintiff similarly fails to identify either direct or circumstantial evidence to support her retaliation claim.  To prove retaliation based upon direct evidence of discrimination, plaintiff

must offer evidence of conduct or statements that both (1) "reflect directly the alleged discriminatory attitude," and (2) "bear directly on the contested employment decision*." Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (citation omitted). As discussed above, such direct evidence should not require the Court to draw any inference in discerning a discriminatory intent. *See Mann v. Winston-Salem State Univ.*, 1:14-CV-1054, 2017 WL 3130324, at *5 (M.D. N.C. July 21, 2017).

Here, plaintiff argues that she can prove retaliation based upon direct evidence alone, because she received a "sub-par" performance review on October 2, 2017, after complaining to human resources about her non-selection for the IT Manager, Outpatient Services position in November and December of 2012 and complaining about an incident where Alan Johnson "made fun of" her in September 2014. Pl. Resp at 28-29. But, again, the Court must draw an inference from these alleged incidents to find discriminatory or retaliatory intent. *See Mann*, 2017 WL 3130324, at *5. The Court also observes that plaintiff's non-selection for various management positions at DCH could be explained by the undisputed fact that plaintiff lacked the prior supervisory experience required for these positions. Plaintiff's "sub-par" performance review is also susceptible of an inference that something other than racial animus motivated this action, because it is undisputed that plaintiff was viewed by her supervisors and colleagues as being difficult to work with. SMF at ¶¶ 18, 76, 98. And so, plaintiff has also failed to put forward direct evidence of retaliation.

The undisputed material facts also show that plaintiff cannot establish a prima facie case of retaliation. To do so, plaintiff must show three elements: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. App*., 626 F.3d 187, 190 (4th Cir. 2010). But, as DCH persuasively argues, plaintiff's negative performance evaluation and her placement on a "Performance Action Plan" do not constitute adverse employment action, because neither action caused a change in plaintiff's job responsibilities, salary, or benefits. *See* Def. Mem. at 19-21; *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits' of the plaintiff's employment.") (internal quotation marks omitted); *Van Story v. Wash. Cty. Health Dept.*, No. 17-3590, 2019 WL 3340656, at *18 (D. Md. July 25, 2019), *aff'd sub*

*nom*. F. App'x 725 (4th Cir. 2020) (quoting *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013)) (holding that adverse employment actions do not include issuing a personal improvement plan, an attendance warning, a verbal reprimand, or even a proposed termination).

In addition, even if plaintiff could establish an adverse employment action, the multi-year gap of time between the dates of plaintiff's formal complaints to human resources in December 2012 and September 2014, and the date of her "sub-par" performance evaluation in 2017, and placement on a performance action plan in 2019, also serves to negate any inference of a causal connection between plaintiff's protected activity and these employment actions. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982) (holding that three years was too long to infer causation); *Clark v. Chrysler Corp*., 673 F.2d 921, 930 (7th Cir.1982) (holding that two-year lapse in time negated a causation inference). Given this, the undisputed material facts in this matter show that plaintiff cannot satisfy the elements needed to establish a prima facie case of retaliation. And so, the undisputed material facts in this case show that DCH is also entitled to summary judgment in its favor with regards to this final claim. *See* Fed. R. Civ. P. 56.

## V.      CONCLUSION

In sum, the undisputed material facts in this matter show that all but one of plaintiff's failure to hire or promote claims are either time-barred, or have not been administratively exhausted. The undisputed material facts in this matter also show that plaintiff cannot establish by direct evidence, or by a prima facie case, that DCH intentionally discriminated against her with regards to the remaining failure to hire or promote claim in this case. Finally, plaintiff's hostile work environment and retaliation claims are also unsubstantiated by the undisputed material facts in this case.

And so, for the foregoing reasons, the Court:

1. **GRANTS** DCH's motion for summary judgment; and

2. **DISMISSES** the complaint.

Each party to bear its own costs.

**IT IS SO ORDERED**.

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
